# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

ETHELBERT CLARENCE DEFOLI BROADNAX,    )
                                       )
              Plaintiff,    )    Civil Action No. 5:15-03736
                                       )
v.                                     )
                                       )
EMMITT PUGH, *et al.*,                 )
                                       )
              Defendants.    )

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Plaintiff's Application to Proceed Without Prepayment of Fees. (Document No. 1.) By Standing Order, this matter was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.) By Order entered on January 6, 2016, the above case was referred to the undersigned for submission of proposed findings of fact and a recommendation for deposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 5.) Having examined Plaintiff's Complaint, the undersigned has concluded that Plaintiff fails to state a claim for which relief can be granted in this matter and therefore respectfully recommends that Plaintiff's Application to Proceed Without Prepayment of Fees be denied and this matter be dismissed.

### FACTUAL BACKGROUND

On March 26, 2015, Plaintiff, acting *pro se*, filed a Complaint claiming entitlement to relief under 42 U.S.C. §§ 1983 and 1985.[1] (Document No. 2.) Plaintiff names the following as

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed

Defendants: (1) Emmitt Pugh, defense counsel; (2) Tim Deems, City of Beckley Police Chief; (3) Jeffery S. Shumate, Investigator; (4) Kristin Keller; Chief Prosecuting Attorney for Raleigh County; (5) Beckley Police Department; (6) City of Beckley, West Virginia; (7) William O'Brien, Mayor of City of Beckley; (8) Police Officer (name unknown); and (9) Judge Burnside, Circuit Court Judge for Raleigh County. (Id.) Plaintiff first alleges that the above Defendants "conspired to deprive Mr. Broadnax of his federally protected civil rights" on or about June 1, 2011. (Id., pp. 4 – 5.) Next, Plaintiff claims that defense counsel, Emmitt Pugh, "failed to provide assistance." (Id., p. 5.) As relief, Plaintiff requests twenty million dollars. (Id., p. 6.)

On June 2, 2015, Plaintiff filed "Statement of Facts" in support of his Complaint. (Document No. 4.) First, Plaintiff indicates that he objects to the dismissal of a civil action (Case No. 12-C-585) in the Circuit Court of Raleigh County wherein he sought the return of a gun that was improperly confiscated by the Beckley Police Department. (Id., pp. 1 – 2.) Second, Plaintiff alleges that Prosecutor Tom Truman and Magistrate Tanner "participated in the illegal detention of Mr. Broadnax" in Case No. 10-F-1095. (Id., p. 3.) Finally, Plaintiff alleges that Officer Shumate and Prosecutor Keller "lied to the Grand Jury to ensure an indictment for the 'sham arrest.'" (Id., p. 4.)

As Exhibits, Plaintiff attaches the following: (1) A copy of "facts" submitted by Plaintiff on July 10, 2012, for filing in the Circuit Court of Raleigh County in Case No. 12-C-585 (Document No. 4-1, pp. 1 – 2.); (2) A copy of the "Civil Case Information Statement" for Case No. 12-C-585 (Id., pp. 3 – 4.); (3) A copy of Plaintiff's receipt for a pistol purchased from Flat Top Arms, Inc. (Id., p. 5.); (4) A copy of a "Notification of Restriction From Property" where the City of Beckley by Mayor O'Brien advised Plaintiff that he was prohibited from entering "City

---

liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Hall and the Mayor's Office" and the "Beckley Police Department" (Id., pp. 6 - 7.); (5) A copy

of Plaintiff's "Motion for Return of Property" as filed in Case No. 12-C-585 (Id., pp. 8 - 9.); (6)

A copy of the City of Beckley's "Motion to Dismiss" as filed in Case No. 12-C-585 (Id., pp. 10 –

11, 15.); (7) A copy of Plaintiff's Response to the City of Beckley's "Motion to Dismiss" (Id., p.

12.); (8) A copy of a letter to Plaintiff from the Department of Veterans Affairs concerning its

decision on Plaintiff claim for an increase in his service connected compensation (Id., p. 13.); (9)

A copy of the Summons issued for the City of Beckley in Civil Action 12-C-585 (Id., p. 14.);

(10) A copy of the "Responsive Pleadings Case Information Statement" for Civil Action No.

12-C-585 (Id., pp. 16 – 17.); (11) A copy of Plaintiff's "Motion to Proceed" as filed on May 12,

2015, in Case No. 12-C-585 (Document No. 4-2, p. 1.); (12) A copy of Plaintiff's "Motion for

Direct Verdict" as filed in Case No. 12-C-585 (Id., pp. 2 - 3.); (13) A copy of the "Warrant

Narrative" prepared by Cpl. W. Reynolds concerning events occurring on January 11, 2010 (Id.,

p. 4.); (14) A copy of Plaintiff's Motion for Dismissal with Prejudice concerning charges filed in

the Magistrate Court of Raleigh County in Case Nos. 10-M-154 and 10-M-155 on April 26, 2010

(Id., pp. 5 – 7.); (15) A copy of an Order entered on April 26, 2010, by Judge H.L. Kirkpatrick

granting in part and denying in part Plaintiff's Motion for Discovery is Case Nos. 10-M-154 and

10-M-155 (Id., pp. 8 – 11.); (16) A copy of an Order entered on July 16, 2010, by Judge H.L.

Kirkpatrick granting the State's motion to dismiss, with prejudice, Case Nos. 10-M-154 and

10-M-155 (Id., p. 12.); (17) A copy of Captain J.S. Shumate's "Supplement Criminal

Complainant Narrative" concerning events occurring on June 7, 2010 (Id., p. 13.); (18) A copy

of a transcript of statements made by Plaintiff to Captain J.S. Shumate on July 22, 2010 (Id., pp.

14 – 18.); (19) A copy of transcripts of proceedings conducted on September 9, 2010, concerning

Plaintiff's Motion to Dismiss the Criminal Complaint filed on July 23, 2010, by Detective

Shumate alleging that Plaintiff made terrorist threats (Magistrate Case No. 10-F-1095)[2] (Id., pp. 19 – 24.); (20) A copy of the Indictment returned on September 13, 2010, charging Plaintiff with threatening to commit a terrorist act with or without the intent to commit the act in Case No. 10-F-329 (Id., p. 25.); (21) A copy of Plaintiff's allegedly threatening e-mail communication[3] sent to the VA Hospital (Id., p. 26.); (22) A copy of the Notification to the Beckley VA that a possible bomb threat had been made towards the facility (Id., p. 27.); (23) A copy of newspaper articles concerning Plaintiff being charged with making terrorist threats (Id., pp. 28 – 30.); (24) A copy of a "Release Form" Order signed by Circuit Judge Robert A. Burnside, Jr., on April 7, 2011, directing Plaintiff's release from custody after his acquittal in Case No. 10-F-329 (Id., p. 31.); (25) A copy of an "Order of Incarceration to the Southern Regional Jail" entered by Circuit Judge H.L. Kirkpatrick, III, on July 12, 2010, in Case No. 10-IF-60K following Plaintiff's conviction for Obstructing a Police Officer, Fleeing From an Officer, and Disorderly Conduct[4] (Id., pp. 32 – 33.); (26) A copy of Plaintiff's "Motion to Resentence for the Purposes of Appeal" as filed on August 2, 2011 in Case No. 10-IM-60 (Id., p. 34 – 35.); and (27) A copy of an Order

---

[2] The record reveals that Magistrate Greg Tanner denied Plaintiff's Motion to Dismiss the Criminal Complaint regarding case No. 10-F-1095. (Document No. 4-2, pp. 19 – 24.)

[3] In his e-mail, Plaintiff states as follows: "The VA is the worst when it comes to communications. The employees in the same facility don't communicate enough to prevent patients from experiencing problems. I think every one of your hospitals should be blown-up with the staff inside as they are either unwilling to do their jobs or to[o] stupid to know what their jobs are. I've had several problems as a result of your employees and their stupidity. WAKE UP!!!" (Document No. 4-2, p. 26.)

[4] Judge Kirkpatrick sentenced Plaintiff to the following: "[A] term and period of one (1) year in the Southern Regional Jail on the charge of Obstructing a Police Officer and sentenced to a term and period of one (1) year in the Southern regional Jail on the charge of Fleeing From an Officer. Said sentence shall run concurrently with each other. It is further Ordered that the defendant pay a fine in the amount of $100.00 on the charge of Disorderly Conduct." (Document No. 4-2, p. 32.)

entered by Circuit Judge Kirkpatrick on September 8, 2011, granting a "joint motion requesting that the defendant be sentenced to time served because the defendant no longer wishes to appeal this case" in Case No. 10-IM-60 (Id., p. 36.).

## THE STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327-28, 109 S.Ct. at 1833. A complaint, therefore, fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL

2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)).

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived her of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

## 1.    Improper Party:

In his Complaint, Plaintiff appears to contend that defense counsel, Defendant Emmitt Pugh, provided ineffective assistance of counsel. As stated above, to state and prevail upon a claim under Section 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States. First, the Court finds that Defendants Pugh was not

a "state actor." It is well established that an attorney does not act under the color of state law when retained or court-appointed. Vermont v. Brillon, 556 U.S. 81, 129 S.Ct. 1283, 1291, 173 L.Ed.2d 231 (2009)("Unlike a prosecutor or the court, assigned counsel ordinarily is not considered a state actor."); Polk County v. Dodson, 454 U.S. 312, 3325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981)("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980)(state-appointed counsel is not acting under color of state law), cert denied, 454 U.S. 1141, 102 S.Ct. 99, 71 L.Ed.2d 293 (1982); Deas v. Potts, 547 F.2d 800 (4th Cir. 1976)("A private attorney who is retained to represent a criminal defendant is not acting under color of state law, and therefore is not amenable to suit under § 1983."). Thus, Plaintiff cannot pursue a Section 1983 claim against Defendant Pugh.

2.    **Prosecutorial Immunity:**

To the extent Plaintiff is asserting a claim against Prosecutor Keller, the undersigned finds such a claim to be without merit. Prosecutors have absolute immunity for activities performed as "an officer of the court" if the conduct at issue is closely associated with the judicial phase of the criminal process. Van de Kamp v. Goldstein, 555 U.S. 335, 341 - 343, 129 S.Ct. 855, 860 - 862, 172 L.Ed.2d 706 (2009). In determining whether a prosecutor is entitled to absolute immunity, the Court must apply the "functional approach" examining the nature of the function performed. Id., 555 U.S. at 342, 129 S.Ct. at 861. It is well established that prosecutors are absolutely immune "for their conduct in initiating a prosecution and in presenting the State's case, insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" Burns v. Reed, 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991)

7

(quoting Imbler, 424 U.S. at 430 - 431, 96 S.Ct. at 995). Further, absolute immunity extends to "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." Buckley v. Fitzsimmons, 509 U.S. 259, 272, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993)(quoting Imbler, 424 U.S. at 431, 96 S.Ct. at 995 - 996)). A prosecutor acts as an advocate or "officer of the court" when performing tasks, such as (1) initiating a judicial proceeding, (2) presenting evidence in support of a search warrant application, (3) conducting a criminal trial, bond hearing, grand jury proceeding or pre-trial hearing, (4) engaging in "an out-of-court effort to control the presentation of [a] witness' testimony," and (5) making a "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before the grand jury after a decision to seek an indictment has been made." Buckley, 509 U.S. at 272, 113 S.Ct. at 2615(quoting Imbler, 424 U.S. at 431, 96 S.Ct. at 995 - 996); Van de Kamp, 555 U.S. at 434, 129 S.Ct. at 861; Dababnah v. Keller-Burnside, 208 F.3d 467, 471 - 472 (4th Cir. 2000)(stating that "numerous courts have found prosecutors absolutely immune when undertaking [extradition proceedings].")

Furthermore, a prosecutor is entitled to absolute immunity even if he or she "acted with an improper state of mind or improper motive." Shmueli v. City of New York, 424 F.3d 231, 237 (2nd Cir. 2005); also see Smith v. McCarthy, 349 Fed.Appx. 851, 859 (4th Cir. 2009), cert. denied, 562 U.S. 829, 131 S.Ct. 81, 178 L.Ed.2d 26 (2010); Brown v. Daniel, 230 F.3d 1351 (4th Cir. 2000)("[T]o the extent [plaintiff] alleges that the prosecutors engaged in misconduct during the prosecution of this case . . ., the prosecutors are absolutely immune."). Thus, prosecutors are entitled to absolute immunity for withholding materially exculpatory evidence, and knowingly presenting perjured testimony or false or misleading evidence to the Court or grand jury. Burns,

500 U.S. at 490-92, 111 S.Ct., at 1941-42("A state prosecuting attorney is absolutely immune from liability for damages under § 1983 for participating in a probable-cause hearing . . .."); Imbler, 424 U.S. at 422, 96 S.Ct. 984 at 991(citing Yaselli v. Goff, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927))(finding prosecutor entitled to absolute immunity for allegations that he "maliciously and without probable cause procured plaintiff's grand jury indictment by the willful introduction of false and misleading evidence."); also see Brown v. Daniel, 230 F.3d at 1352; Lyles v. Sparks, 79 F.3d 372, 377 (4th Cir. 1996); Carter v. Burch, 34 F.3d 257, 263 (4th Cir. 1994), cert. denied, 513 U.S. 1150, 115 S.Ct. 1101, 130 L.Ed2d 1068 (1995). Although prosecutors may be entitled to absolute immunity, prosecutors are subject to criminal and professional sanctions for prosecutorial abuses. Imbler, 424 U.S. at 429, 96 S.Ct. at 994; Malley v. Briggs, 475 U.S. 335, 343, n. 5, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). It is well recognized that "[a]bsolute prosecutorial immunity 'is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself.'" Dababnah, 208 F.3d at 471(quoting Kalina v. Fletcher, 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997)). The Imbler Court determined the importance of protecting the integrity of the prosecutor's office and the judicial system outweighs the desire to afford civil redress to a wronged defendant. Imber, 424 U.S. at 427 - 429, 96 S.Ct. at 993 - 994.

A prosecutor, however, is not entitled to absolute immunity for "investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." Buckley, 509 U.S. at 273, 113 S.Ct. at 2615(citing Burns, 500 U.S. at 491, 11 S.Ct. at 1941-42). Thus, a prosecutor is only entitled to qualified immunity for administrative

9

actions or investigative functions not related to trial preparation, such as holding a press conference, engaging in investigative activity prior to the establishment of probable cause to arrest, providing police officers with legal advice during the investigative phase, or acting as a complaining witness in support of a warrant application. Id.; also see Van de Kamp, 555 U.S. at 342 - 343, 129 S.Ct. at 861. The Supreme Court has explained as follows:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other. Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he "has no greater claim to complete immunity than activities of police officers allegedly acting under his direction."

Buckley, 509 U.S. at 273, 113 S.Ct. at 2616(internal citations omitted). Thus, a prosecutor does not have absolute immunity for a claim that he or she fabricated evidence during the preliminary investigation of an unsolved crime. Id., 509 U.S. at 275, 113 S.Ct. at 2616 - 2617.

In the instant case, Plaintiff alleges that Prosecutor Keller presented Detective Shumate's false statement to the grand jury in order to obtain Plaintiff's indictment. As stated above, prosecutors are entitled to absolutely immune concerning their decision to initiate prosecution and in conducting bond or revocation hearings. See Imbler, 424 U.S. at 431, 96 S.Ct. at 995(holding that "in initiating a prosecution . . . the prosecutor is immune"). The Court further finds that Prosecutor Keller is entitled to absolute immunity as her conduct was intimately associated with the judicial phase of the criminal process. See Imbler, 424 U.S. at 422, 96 S.Ct. 984 at 991(citing Yaselli, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927))(finding prosecutor entitled to absolute immunity for allegations that he "maliciously and without probable cause

procured plaintiff's grand jury indictment by the willful introduction of false and misleading evidence."); Smith, 349 Fed.Appx. at 859 (a prosecuting attorney is absolutely immune for conspiring with police officers to present false testimony and for withholding exculpatory evidence as these actions are "intimately associated with the judicial process); Logan v. Laterzo, 24 Fed.Appx. 579, 581 (7th Cir. 2001)(finding prosecutors absolutely immune for allegedly delaying the criminal trial by misrepresenting the existence of a crime-scene videotape); Brown, 230 F.3d at 1351(finding that prosecutor was entitled to absolute immunity for knowingly using perjured testimony); Lyles, 79 F.3d at 377(holding that a prosecutor enjoyed absolute immunity from claims that she made false representations and suborned perjury before the grand jury); Rhodes v. Smithers, 939 F.Supp. 1256, 1269 (S.D.W.Va. Sept. 15, 1995)(District Judge Copenhaver)("[T]he presentation of false testimony in the course of a judicial proceeding is an allegation 'for which the prosecutor is afford absolute immunity.'")(citing Carter v. Burch, 34 F.3d 257, 263 (4th Cir. 1994)). Accordingly, the undersigned recommends that Plaintiff's claims against Prosecutor Keller be dismissed because she is absolutely immune from suit under Section 1983.

**3.    Judicial Immunity:**

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine in Bradley v. Fisher, 80 U.S. 335, ___ S.Ct. ___, 20 L.Ed. 646 (1872)." Imbler v. Patchman, 424 U.S. 409, 419, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976). Judicial immunity does not attach when a judicial officer acts in the clear absence of all jurisdiction. Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); Pressly v.

Gregory, 831 F.2d 514, 517 (4th Cir. 1987). The doctrine of judicial immunity, however, "attaches even if the act in question was in excess of [the judge's] authority." Jackson v. Houck, 181 Fed. Appx. 372, 372 (4th Cir. 2006) (quoting Mireles v. Waco, 502 U.S. 9, 12-13, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)). This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." Id. (adopting doctrine of absolute judicial immunity in Section 1983 actions) (internal citation omitted).

Based upon the allegations contained in the Complaint, the undersigned finds that Judge Burnside is absolutely immune from suit. Plaintiff appears to argue that Judge Burnside allowed his constitutional rights to be violated during his criminal proceedings and civil proceedings before the Court. As stated above, judges have absolute immunity for their judicial acts even when the judge is accused of acting maliciously and corruptly. Accordingly, Plaintiff's claim against Judge Burnside must be dismissed.

**4.    Statute of Limitations:**

A Plaintiff must file a Section 1983 action within the prescribed time period. Because there is no federally prescribed statute of limitation, Courts look to and apply their respective State's statutes of limitation. See Owens v. Okure, 488 U.S. 235, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). The Fourth Circuit has recognized that "in the absence of any state statute of limitations specifically applicable to suits to redress a violation of civil rights, the West Virginia limitation on personal injury actions applies." McCausland v. Mason County Bd. of Ed., 649 F.2d 278 (4th Cir. 1981), cert. denied, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981).

Under West Virginia law, the applicable period of limitation upon a plaintiff's right to file a personal injury is two-years from the time the cause of action accrued. See W.Va. Code § 55-2-12(b).[3] The applicable period of limitations for a claim of false imprisonment is one-year. Wilt v. State Auto. Mut. Ins. Co., 203 W.Va. 165, 506 S.E.2d 608, 613 (1998); also see Snodgrass v. Sisson's Mobile Home Sales, Inc., 161 W.Va. 588, 244 S.E.2d 321 (1978). Although the limitation period is borrowed from State law, the question of when a cause of action accrues is answered according to federal law. See Brooks v. City of Winston-Salem, NC, 85 F.3d 178, 181 (4th Cir. 1996). Under federal law, a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, MD House of Corr., 64 F.3d 951, 955 (4th Cir. 1995)(en banc), cert. denied, 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996)(citing United States v. Kubrick, 444 U.S. 111, 122-24, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)). "Accrual of a claim does not 'await awareness by the plaintiff that his injury was negligently inflicted.'" Nasim, 64 F.3d at 955 (quoting Childers Oil Co., Inc. v. Exxon Corp., 960 F.2d 1265, 1272 (4th Cir. 1992)). Accordingly, for a Section 1983 action, "a cause of action accrues either when the plaintiff has knowledge of his claim or when he is put on notice -- e.g., by the knowledge of the fact of injury and who caused it -- to make reasonable inquiry and that inquiry would reveal the

---

[3]    West Virginia Code § 55-2-12 provides as follows:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

existence of a colorable claim." <u>Nasim</u>, 64 F.3d at 955. To determine when a plaintiff possessed knowledge of his injury, the Court "may look to the common-law cause of action most closely analogous to the constitutional right at stake as an 'appropriate starting point.'" <u>Brooks</u>, 85 F.3d at 181 (citations omitted).

Plaintiff's Complaint alleges that he was falsely arrested, falsely imprisoned, and maliciously prosecuted because there was insufficient evidence to support the charges of terrorist threats in Case No. 10-F-329. A Section 1983 claim for false arrest and false imprisonment accrues when the claimant is detained pursuant to legal process.[4] <u>Wallace v. Kato</u>, 549 U.S. 384, 127 S.Ct. 1091, 1100, 166 L.Ed.2d 973 (2007)(holding "that the statute of limitations upon a § 1983 claim seeking damages for false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); <u>Owens v. Blatimore City States Attorneys Office</u>, 767 F.3d 379, 389 (4th Cir. 2014)(explaining that "the statute of limitations for false imprisonment does not begin to run at the *outset* of a Plaintiff's false imprisonment; rather, limitations begin to run only at the *end* of a Plaintiff's false imprisonment."); <u>Magwood v. Streetman</u>, 2016 WL 5334678, * 5(D.S.C. Aug. 15, 2016)(explaining that false imprisonment consists of detention without legal process, which ends once the victim becomes held pursuant to such process); <u>Smith v. Allred</u>, 2016 WL 1274593, * 8 (S.D.W.Va. March 31, 2016)(J. Copenhaver)([S]ection 1983 claims for wrongful arrest do not accrue until the individual is released or his detention becomes lawful."). A plaintiff's claim for false arrest or false imprisonment ceases once plaintiff

---

[4]  The Supreme Court noted that "[f]alse arrest and false imprisonment overlap; the former is a species of the later." *Wallace*, 127 S.Ct. at 1095.

14

is detained pursuant to legal process, and at this point, plaintiff's claim becomes a claim of malicious prosecution. See Wallace, 549 U.S. at 388-89, 127 S.Ct. at 1091("Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process - - when, for example, he is bound over by a magistrate or arraigned on charges . . . Thereafter, unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process.")(internal citations omitted). A Section 1983 claim for malicious prosecution accrues when the prosecution has terminated in Plaintiff's favor.[1] Id. at 1097; see also Brummett v. Camble, 946 F.2d 1178, 1184 (5th Cir. 1991), cert. denied, 504 U.S. 965, 112 S.Ct. 2323, 119 L.Ed.2d 241 (1992)(Listing federal cases adopting this common law rule); Albright v. Oliver, 510 U.S. 266, 280, 114 S.Ct. 807, 816, 127 L.Ed.2d 114 (1994)(J. Ginsburg, concurring)(Stating that the limitation period for a malicious prosecution claim should begin to run upon dismissal of the criminal charges, not at the start of the state procedures.).

Based upon a review of the fact of Plaintiff's Complaint and Exhibits, the record reveals that Judge Kirkpatrick denied Plaintiff's Motion to Dismiss the Criminal Complaint on September 9, 2010, charging Plaintiff with threatening to commit a terrorist act. (Document No. 4-2, p. 19 – 24.) The record further reveals that Plaintiff was acquitted of the above charge on

---

[1] It is of significance to note here for purposes of accrual the distinction between a claim for false arrest or imprisonment and malicious prosecution. Generally, a plaintiff knows of his injuries in a cause of action for false arrest without probable cause on the date of his arrest. Thus, a cause of action for false arrest will accrue at the time of arrest. *See Covington v. City of New York*, 171 F.3d 117 (2d Cir.), *cert. denied*, 528 U.S. 946, 120 S.Ct. 363, 145 L.Ed.2d 284 (1999); *Rose v. Bartle*, 871 F.2d 331, 348-49, 351 (3d Cir. 1989). A plaintiff does not know of his injuries in a cause of action for malicious prosecution, however, until the charges are disposed of in his favor.

April 7, 2011. (Id., p. 31.) Based on the foregoing, the undersigned finds that Plaintiff was detained pursuant to legal process on September 9, 2010. Accordingly, by applying the West Virginia one-year statute of limitation together with the federal standard of accrual, the undersigned finds that Plaintiff's cause of action for false arrest expired on September 9, 2011, one-year from the date Plaintiff was detained pursuant to legal process, and his cause of action for malicious prosecution expired on April 7, 2012, one-year from the date he was acquitted of the charged offense. Plaintiff filed his instant Complaint on March 26, 2015. Accordingly, Plaintiff's Complaint should be dismissed because the one-year statute of limitations has run as to Plaintiff's claims of false arrest, false imprisonment, and malicious prosecution regarding the charge of threatening a terrorist act.

## 5.    <u>Heck</u>:

Plaintiff appears to allege that his constitutional rights were violated during the course of his criminal proceedings in the Circuit Court of Raleigh County regarding Case No. 10-IM-60. Specifically, Plaintiff appears to challenge the validity of his conviction in Case No. 10-IM-60 based upon allegations of prosecutorial misconduct and insufficient evidence to support the conviction. Given the nature of Plaintiff's allegations, it appears that Plaintiff is implying that his conviction is invalid as a result of various constitutional violations during criminal proceedings in the Circuit Court of Raleigh County, West Virginia. Consequently, the undersigned finds that Plaintiff has failed to state a cognizable claim under Section 1983 pursuant to <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In <u>Heck</u>, the United States Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the

16

> conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing the relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Id. at 486-87, 114 S.Ct. 2372. See also Ballenger v. Owens, 352 F.3d 842 (4th Cir. 2003)(holding that an arrestee's Section 1983 claim was not cognizable against state trooper, alleging unreasonable search and seizure, under *Heck,* since judgment in arrestee's favor would have implied the invalidity of conviction). Plaintiff does not indicate that he has been successful in *habeas* proceedings. The undersigned, therefore, finds that because Plaintiff has not demonstrated that his criminal conviction has been invalidated concerning Case No. 10-IM-60, Plaintiff's Section 1983 claim is not cognizable pursuant to Heck. Accordingly, the undersigned respectfully recommends that the above claims be dismissed.

**6.    Plaintiff's Claim of Conspiracy:**

The undersigned finds that Plaintiff's conclusory allegations of a conspiracy fail to state a claim. Specifically, Plaintiff alleges that Defendants conspired with each other "to deprive Mr. Broadnax of his civil rights." (Document No. 2.) Tile 42 U.S.C. § 1985(3) provides as follows:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having or exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Therefore, to state a claim for relief under Section 1985(3), a plaintiff must allege (1) a person's engagement in a conspiracy; (2) for the purpose of depriving, either directly or indirectly, the

plaintiff or class of persons of the equal protection of the laws, or of equal privileges or immunities under the laws; (3) the person's act in furtherance of the conspiracy; (4) the plaintiff's injury in his person or property or deprivation of a right or privilege of a citizen of the United States. Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995). Allegations specifying "concrete supporting facts" are required to state a claim for relief under Section 1985(3). Conclusory allegations of conspiracy will not suffice. Simmons v. Poe, 47 F.3d at 1377 ("[W]e have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts.")

The undersigned finds that Plaintiff has not stated a claim for which relief may be granted under Section 1985(3). Plaintiff does not allege that Defendants engaged in a conspiracy to deprive him of the equal protection of the laws or of equal privileges and immunities under the laws of the United States. Moreover, Plaintiff has not specifically alleged concrete facts with respect to each of the four elements required to prove a Section 1985(3) claim as set forth above. Plaintiff's allegations are conclusory. Plaintiff concludes that Defendants conspired "to deprive Mr. Broadnax of his civil rights." Thus, Plaintiff's Section 1985 claim against Defendants should therefore be dismissed.

**7.    Return of Confiscated Pistol:**

To the extent Plaintiff is attempting to allege a due process claim under the Fourteenth Amendment, Plaintiff has failed to assert a plausible claim. Plaintiff states that he has filed an action in the Circuit Court of Raleigh County (Case No. 12-C-585) seeking the return, or compensation, for a pistol confiscated by the City of Beckley Police Department. (Document No. 4-1.) To assert a plausible due process claim, a plaintiff must show that his deprivation was not

"amenable to 'rectification by . . . post-deprivation state remedies.'" Mora v. The City of Gaithersburg, MD, 519 F.3d 216, 231 (4th Cir. 2008); also see Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.") A plaintiff's ability to file a state claim for conversion constitutes a meaningful post-deprivation remedy. See Kidd v. Bradley, 578 F.Supp. 275, 276-77 (N.D.W.Va. 1984)(recognizing that under the common law of West Virginia, the plaintiff had a cause of action for conversion and the negligent deprivation of property, which provided plaintiff an adequate post-deprivation remedy); also see Goodman v. Ramey, 2012 WL 5966642, * 4 (S.D.W.Va. Nov. 29, 2012)(J. Copenhaver)(finding that plaintiff failed to state a constitutional claim for the loss of property where he could have challenged the taking "in a garden-variety tort claim in state court."). Since Plaintiff has the ability to assert a conversion claim in State court concerning the alleged taking of his pistol, the undersigned finds that Plaintiff has failed to state a plausible due process claim. Furthermore, Plaintiff indicates that he has filed an action in State court seeking the return of his pistol (Case No. 12-C-585). Plaintiff, however, appears to be dissatisfied with the fact that the State has filed a motion to dismiss in Case No. 12-C-585. Based upon a review of documents submitted by Plaintiff, it appears that his State court case was ongoing at the time he filed the above action and there had been no decision upon the State's motion to dismiss. Of importance, the undersigned notes that there is no allegation or indication that existing State remedies are inadequate. The mere fact that a motion to dismiss has been filed by the State, or the fact that Plaintiff may be unsuccessful in his State case, does not establish

that Plaintiff's property was taken without due process. Accordingly, the undersigned finds that Plaintiff has failed to state a plausible due process claim.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's Application to Proceed Without Prepayment of Fees and Costs (Document No. 1), **DISMISS** Plaintiff's Complaint (Document No. 2), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge

Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: October 24, 2017.

Omar J. Aboulhosn
United States Magistrate Judge